

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**
Spottswood W. Robinson, III and
Robert R. Merhige, Jr. Federal Courthouse
701 East Broad Street
Richmond, Virginia 23219

**ROBERT F. DOUGLAS III**
**VALERIE L. DOUGLAS,**

            Plaintiffs,

v.                                          Civil Action No. **3:12CV854**

**BRANCH BANKING AND TRUST COMPANY**
Please Serve:
CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, Virginia 23060,
Registered Agent

            Defendant.

## COMPLAINT

Now come Robert F. Douglas III and Valerie L. Douglas ("the Douglases"), by counsel, and set forth the following:

### Parties

1. The Douglases are natural persons who are husband and wife, and who reside in the Commonwealth of Virginia and who are citizens of the Commonwealth of Virginia.

2. Branch Banking and Trust Company ("BB&T") is a for-profit bank chartered in North Carolina with principal place of business in North Carolina.

### Jurisdiction

3. This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 because the parties are citizens of different states and because the amount in controversy exceeds $75,000. The

1

Douglases are citizens of the Commonwealth of Virginia and BB&T is a North Carolina chartered bank whose principal place of business is in North Carolina.

## Venue

4. Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391 (b) and 1441 (a). This case arises out of a contract entered into in Chesterfield County, Virginia.

## Facts

### *General Averments Applicable to Both Counts*

5. On May 24, 2004, the Douglases entered into a mortgage loan ("the loan") in which they were the borrowers. The loan was evidenced by a note ("the note") signed by them, secured by a deed of trust ("the deed of trust") signed by them, and recorded in the clerk's office of this Court ("the public land records") at Deed Book 2329, beginning at Page 281, which was a lien on property belonging to the Douglases ("the property") located at 9192 Blakewood Drive, Mechanicsville, Virginia 23116. The deed of trust appointed Karen J. Glascock ("Glascock") and Carol F. Ordess ("Ordess") as trustees on the deed of trust.

6. The deed of trust was drafted by the lender and all ambiguities in the deed of trust should be construed in favor of the Douglases.

7. BB&T claimed rights as holder of the note.

### *Count One – Breach of Explicit Covenant in Paragraph 6(C) of the Note and Paragraph 22 of Deed of Trust; Suit for Compensatory Damages*

8. The note at paragraph 6(C) provided that the lender could accelerate the note after giving a proper 30-day notice of default, stating as follows:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all

the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

9. The deed of trust provided, in pertinent part, as follows:

NON-UNIFORM COVENANTS. Borrower and Lender ...covenant and agree as follows:

**Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .**

. . . .

**The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**

. . . .

**The notice shall ... inform Borrower . . . . of the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.**

10. The deed of trust identified the Douglases as borrowers.

11. On April 15, 2010 BB&T mailed to the Douglases a letter, copy of which is attached hereto marked "Exhibit A."

12. Exhibit A was back-dated to April 7, 2010.

13. Exhibit A did not comply with paragraph 6(C) of the note or paragraph 22 of the deed of trust as recited in paragraphs 8 and 9 of this complaint for the following reasons:

   A. Exhibit A demanded payment of $4,242.39 within less than 30 days, specifically within 22 days of the mailing of Exhibit A.

   B. Exhibit A stated to the Douglases that they were required to pay $4,242.39 plus the next month's payment by May 7, 2010 to avoid acceleration and foreclosure. This constituted a material overstatement of the arrearage as of both the time of mailing and the stated date of Exhibit A. Exhibit A stated that the Douglases

3

       were required to pay the payment due on May 1, 2010 by May 7, 2010 to avoid acceleration and foreclosure, a material overstatement of the amount BB&T could demand as a condition to avoid acceleration and foreclosure.

    C.    Any ambiguity in the deed of trust was required to be read against the lender, which prepared the deed of trust, and its successor-in-interest. The requirement of paragraph 22 of the deed of trust, as recited in paragraph 9 of this complaint, required the lender to identify a present default and to specify a date within which present default could be cured, which could not be less than 30 days from the date of the notice.

    D.    At the time Exhibit A was sent the amount of default was not more than $4,242.39. Under the terms of the deed of trust, as recited in paragraph 9 of this complaint, Exhibit A should have given the Douglases at least 30 days from April 15, 2010, or at least until May 15, 2010 to pay no more than $4,242.39 to avoid acceleration and foreclosure.

    E.    Exhibit A by its terms, stated that it precluded the Douglases from avoiding acceleration and foreclosure even by paying $4,242.39 the amount then due and even if such amount were paid by April 15, 2010. Thus, Exhibit A, by its terms, claimed to preclude the Douglases from avoiding acceleration and foreclosure if they paid the amount due (when Exhibit A was mailed on April 15, 2010) by May 15, 2010.

14.    No creditor ever sent to the Douglases, or to either of them, any notice that complied with paragraph 22 of the deed of trust as recited in paragraph 9 of this complaint.

15.    BB&T never sent to the Douglases, or to either of them, any notice that complied with

paragraph 22 of the deed of trust as recited in paragraphs 8 and 9 of this complaint.

16. The Douglases did not, in fact, receive Exhibit A.

17. If the Douglases had received a proper 30-day cure notice as required by paragraph 22 of the deed of trust, as recited in paragraphs 8 and 9 of this complaint, they would have brought the note current. They had the resources to do so.

18. BB&T purported to appoint PFC as substitute trustee (although, as will be set forth elsewhere in this complaint, such purported appointment did not, in fact, appoint PFC as substitute trustee). BB&T instructed PFC to foreclose on the property. In doing so, BB&T violated the lender covenants set forth in paragraph 6(C) of the note and paragraph 22 of the deed of trust as recited in paragraphs 8 and 9 of this complaint.

19. In reaction to the instruction by BB&T to foreclose on the property, PFC caused an advertisement to be published in a newspaper with general circulation in Hanover County, Virginia for foreclosure of the property on July 15, 2010. In doing so, PFC acted *ultra vires* on its own as agent for BB&T.

20. BB&T, through PFC as its agent, through the said publication of the said newspaper advertisement for sale of the property on July 15, 2010, violated the explicit lender covenant in paragraph 22 of the deed of trust as recited in paragraph 9 of the deed of trust which only allowed foreclosure after the lender had sent a proper 30-day cure notice as required by paragraph 22 of the deed of trust, which was never done.

21. BB&T was not entitled to a foreclosure sale of the property on July 15, 2010 because no creditor – not BB&T, not any creditor – had sent to either or both of the Douglases any notice that met the requirements of paragraph 22 of the deed of trust as recited in paragraph 9 of this complaint. For the same reason and because it had never been

appointed as substitute trustee, PFC did not have the authority or power to foreclose on the property on July 15, 2010.

22. The Douglases did not see the said newspaper advertisement and did not know the property was scheduled for foreclosure and did not find out that the property was scheduled for foreclosure until after July 15, 2010.

23. On July 15, 2010, PFC, acting on its own and as agent for BB&T, purported to conduct a foreclosure sale of the property. Seelman D. L. Contractor, LLC ("Seelman") made the high bid for much less than the actual value of the property.

24. In conducting the purported foreclosure sale on July 15, 2010, PFC acted *ultra vires* on its own and as agent for BB&T.

25. Because PFC acted as agent for BB&T, the purported foreclosure sale was conducted by BB&T in violation and breach of the terms of paragraph 22 of the deed of trust as recited in paragraph 9 of this complaint.

26. BB&T reported to credit bureaus that the property had been foreclosed upon; this was false because the purported foreclosure of July 15, 2010 was void, alternatively voidable, for the reasons set forth herein above and elsewhere in this complaint.

27. As a result of such false report, the credit ratings of the Douglases, as owners of the property, were damaged, causing economic harm to them.

28. After the foreclosure, PFC executed a document for transfer of title to the property to Seelman for a value significantly less than the actual value of the property. PFC delivered the trustee's deed to Seelman, which recorded it in the public land records. The trustee's deed deprived the Douglases of ownership of the property.

29. In executing the trustee's deed, PFC acted on its own and as agent for BB&T.

30. Thus, by the execution of the trustee's deed, BB&T, through PFC, violated and breached the terms of paragraph 22 of the deed of trust as recited in paragraph 9 of this complaint.

31. Some time after the foreclosure auction and the execution, delivery, and recordation of the trustee's deed, the Douglases found out for the first time about the foreclosure.

32. After the foreclosure, PFC executed a document for transfer of title to the property to Seelman for a value significantly less than the actual value of the property. PFC delivered the trustee's deed to Seelman, which recorded it in the public land records. The trustee's deed deprived the Douglases of ownership of the property.

33. In executing the trustee's deed, PFC acted on its own and as agent for BB&T.

34. By the execution of the trustee's deed, BB&T, through PFC, violated and breached the terms of paragraph 22 of the deed of trust as recited in paragraph 9 of this complaint.

35. On November 30, 2010, the Douglases, by counsel, sent a letter to BB&T, Seelman, and counsel for PFC a letter, copy of which is attached hereto marked "Exhibit B."

36. As a proximate result of BB&T's breach of the terms of paragraph 22 of the deed of trust as recited in paragraph 9 of this complaint, the Douglases sustained the following damages:

   A. They lost substantial equity in the property.

   B. They lost rents on the property.

   C. They sustained damage to their credit record with resultant economic loss.

   D. They were substantially inconvenienced.

   E. They will sustain in the future the loss of rents on the property and damage to their credit record.

37. As a result of the foregoing breach of contract by BB&T, the Douglases are entitled to

recover compensatory damages from BB&T.

**Count Two—Breach of Provisions of Paragraphs 16, 22, and 24 of the Deed of Trust; Bogus Appointment of Purported Substitute Trustee**

38. The Douglases re-aver the facts set forth in paragraphs 1-36 of this complaint.

39. The deed of trust provided, in part, the following:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all of the title, power and duties conferred upon Trustee herein and by applicable law.

40. In addition to the provisions of paragraph 22 of the deed of trust recited in Count One of this complaint, paragraph 22 of the deed of trust stated the following:

> NON-UNIFORM COVENANTS. Borrower and Lender …covenant and agree as follows:
> …..
> **If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. ……**
> …..
> **…..Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the property ….**
> …..
> **Trustee shall deliver to the purchase Trustee's deed conveying the Property with special warranty of title……**

41. The deed of trust provided that, if certain conditions precedent were satisfied, the trustee or any substitute trustee duly appointed could invoke a power of foreclosure sale, but specifically stated that the right of foreclosure sale was limited to a sale complying with applicable law. Specifically, the deed of trust stated in part in Paragraph 16, "All rights …contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."

8

42. In paragraph J of a section on definitions, the deed of trust defined "Applicable Law" to mean "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law] as well as all applicable final, non-appealable judicial opinions."

43. According to the provisions of Section 22 of the deed of trust, as recited in this Count of this complaint, read in conjunction with the provisions of Paragraph 16 of the deed of trust, as recited in this County of this complaint, where such provisions of paragraph 22 and 16 are read in conjunction with the definition of "Applicable Law" recited in this Count of this complaint, the deed of trust required that any foreclosure must be by the trustee on the deed of trust acting in compliance with all applicable Virginia statutes.

44. The applicable Virginia statutes include the following: Va. Code Ann. Section 55-59(9) providing that a trustee could be removed and a substitute trustee appointed by a document executed by the lender or by an entity owning more than 50% of the monetary obligation of the mortgage debt; (b) Va. Code Ann. Section 55-59.2 providing that any foreclosure be pursuant to a newspaper advertisement; and (c) Va. Code Ann. Section 55-59.3 providing that any foreclosure much be according to a newspaper advertisement identifying the trustee or substitute trustee.

45. Under the contract provisions of the deed of trust, the lender could not foreclose in a non-judicial foreclosure through an entity not the trustee and not properly appointed as the substitute trustee. Further, under the contract provisions of the deed of trust, no entity could foreclose in a non-judicial foreclosure unless the foreclosure be by the trustee on the deed of trust or a duly appointed substitute trustee.

46. Virginia is both a judicial and non-judicial foreclosure state. No lender can effect a

judicial foreclosure except through an order signed by a duly elected or appointed judge. No lender can effect a non-judicial foreclosure except through the trustee on the deed of trust or a duly appointed substitute trustee. In either case, the arbiter of the foreclosure process, a judge or a trustee or substitute trustee, under Virginia law must act with impartiality towards both the lender and the borrower and is vested with certain discretion. In non-judicial foreclosures, trustees or substitute trustees, acting as impartial arbiters, have discretion to do more in advertisement than the statutory minimum and have other discretion that may benefit either the homeowner and/or the borrower, depending on how the trustee or substitute other discretion that could benefit the borrower/homeowner. Any borrower and/or homeowner as to a non-judicial foreclosure process has standing that the arbiter of the non-judicial foreclosure process be the trustee appointed in the deed of trust or a properly appointed substitute trustee.

47. The provisions of Va. Code Ann. Section 55-59(9), incorporated into the deed of trust by the provisions of paragraph 22, 24, and 16 of the deed of trust, read according to the definition of "Applicable Law" in the definitions section of the deed of trust, do not allow appointment of a substitute trustee by mere wish of the lender. Rather, such appointment must be by an appointment document executed by the lender or the entity with over 50% of the monetary obligation of the mortgage debt.

48. Va. Code Ann. Section 55-59(9) provides that a holder of a note secured by a deed of trust can appoint a substitute trustee and that, upon execution of such an appointment by the lender, the substitute trustee is invested with the powers granted to the trustee by the deed of trust.

49. Under the deed of trust and Va. Code Ann. Section 55-59(9), the lender could not effect a

removal of the trustee or appointment of a substitute trustee by mere wish, but had to execute a document that appointed a substitute trustee in order to remove Security Title and to replace Security Title with a substitute trustee. Absent execution of a document that removed a substitute trustee, only Security Title could foreclose on the home. Further, Virginia statute requires that any advertisement for sale of property at foreclosure had to state the name and address of the trustee or substitute trustee and Virginia statutory law requires that there be sent to the homeowner by certified mail a notice for any foreclosure that recites recordation of appointment of any substitute trustee or includes an executed and notarized document.

50. The deed of trust provided that the trustee on the deed of trust could foreclose on the property under certain circumstances, but did not allow BB&T to obtain foreclosure of the property by anyone other than the trustee (or a duly designated substitute trustee) of the property.

51. Attached hereto marked "Exhibit C" is a document put to record in the public land records.

52. Exhibit C is a bogus document.

53. The second page of Exhibit C was not attached to, was not associated with the first page of Exhibit C when the second page was signed. When the second page of Exhibit C was signed, it was a one-page document which contained no appointive language and which took no action whatever. Thus, Glascock and Ordess remained trustees on the deed of trust. The first page of Exhibit C, not associated with the second page, was nevertheless, in part of a bogus operation, later placed as a purported first page to Exhibit C although it was not such first page.

54. When PFC caused a newspaper advertisement to be published for sale of the property on July 15, 2010, the said newspaper advertisement listed PFC as substitute trustee and did not list Glasscock or Ordess as trustees on the deed of trust. In causing such newspaper advertisement to be published, PFC acted ultra vires and as agent for BB&T. As a result, BB&T, through PFC, contravened the requirements of Va. Code Ann. Section 55-59.3 which requires that any newspaper advertisement for foreclosure identify the trustee or substitute trustee on the deed of trust.

55. When PFC conducted the foreclosure sale on July 15, 2010 it did so *ultra vires* and as agent for BB&T. Thus, BB&T, through PFC, breached the terms of the deed of trust which only allowed the trustee to foreclose on the property in accordance with "applicable law."

56. When PFC executed a trustee's deed to Seelman, it did so *ultra vires* and as agent for BB&T. Thus, BB&T, through PFC, breached the terms of the deed of trust which only allowed the trustee to execute a trustee's (foreclosure) deed conveying away from the Douglases title to the property.

57. As a proximate result of BB&T's breach of the terms of the deed of trust which only allowed the trustee on the deed of trust (or a duly appointed substitute trustee) to foreclose on the property and to convey title to the property to a purchaser at a foreclosure, the Douglases sustained the following damages:

   A. They lost substantial equity in the property.

   B. They lost rents on the property.

   C. They sustained damage to their credit record with resultant economic loss.

   D. They were substantially inconvenienced.

 E. They will sustain in the future the loss of rents on the property and damage to their credit record.

 F. The amount of loss of equity in the property was far in excess of $75,000.

58. As a result of the foregoing breach of contract by BB&T as recited in this count of this complaint, the Douglases are entitled to recover compensatory damages from BB&T.

### *Applicable to Both Counts*

59. Paragraph 20 of the deed of trust provided that the Douglases were required to send a grievance letter to the lender prior to filing suit. Attached hereto as "Exhibit D" is such a grievance letter, which was sent on November 30, 2010. BB&T never made any proper response to Exhibit D.

### Call for Trial by Jury

60. The Douglases call for trial by jury.

### Conclusion

WHEREFORE, the Douglases pray that the Court enter judgment in their favor against BB&T for $400,000 compensatory damages.

        Respectfully submitted,

        **ROBERT F. DOUGLAS III**
        **VALERIE L. DOUGLAS,**

        By_____
          Counsel

Henry W. McLaughlin (VSB No. 07105)
Drew D. Sarrett (VSB No. 81658)
The Law Office of Henry McLaughlin, P.C.
707 East Main Street, Suite 1375
Richmond, Virginia 23219
(804) 205-9020; fax (877) 575-0245
*Counsel for Robert F. Douglas III and Valerie L. Douglas*